*In the Matter of*
*S.R.E., Minor Child*

In the Family Court of the Navajo Nation
Judicial District of Window Rock, Navajo Nation (Arizona)

No. WR-FC-239-05

September 28, 2005

## ORDER

This docket number was initiated by a Petition for Guardianship on February 23, 2005. The Division of Social Services (DSS) completed and filed a report on September 15, 2005, and the petition came for a final hearing on September 20, 2005. Having considered the record and all testimony and discussions at the hearing, and being otherwise fully informed, the Court enters the following findings and orders:

The minor child S.E. was born on November 30, 2002 to R.E. and K.T. R. and K. separated when child was one year old, and child spent approximately six months with K. after the separation. The child has been in the care of Petitioner since May 2004. The Petitioner is not related to either the minor child or the parents, but is the girlfriend or common law spouse of child's paternal uncle.

While child was in the care of his father, after his parents had separated, K. apparently gave permission for the paternal uncle and the Petitioner to "spend some time with" child. *See* Report of the DSS, 9/15/05, p.2. After that, both parents reported to DSS and testified at the hearing that they made attempts to regain custody of, or have visitation with minor child. In summary, child has been in Petitioner's care for more than a year with little or no contact from R. or K. The DSS report recommends that guardianship "not be granted for the Petitioner" and that "the child be returned to his natural mother." Report of the DSS, 9/15/05, p.6. The Court agrees, and offers further explanation for this very difficult decision.

In the Navajo language, and throughout *Diné bi'i'ool'įįł* (the *Diné* Life Way), we understand the importance and complexities of family and clan relationships, and the bonds between children and parents and community. Those understandings also exist - perhaps to a lesser extent - in the English language and in the legal considerations that this Court must make. The term "guardianship" is a *bilagáana* legal term that describes which individuals have *legal* rights with respect to a child, and who is in the legal position to represent the child's rights. Without court intervention, the biological parents are automatically the legal guardians of their minor children. Pursuant to *bilagáana* law and our statutes, guardianship may be vested in another individual generally if it is found that the parents are unable or unwilling to continue as guardians for the child.

As this Court understands, there are also traditional notions of guardianship and child care within *Diné bi beenahaz'áanii*. For example, children are not just the children of the parents, but they are children of the clan, especially the mother's clan. *See Goldtooth v. Goldtooth*, 3 Nav. R. 223 (W.R. Dist. Ct. 1982). Likewise, a child may be *given* or *offered* to a maternal aunt or other close family or clan relative to be raised, especially if that extended relative did not have children of their own. These guardianship arrangements were meant to preserve *k'é* and harmony within the clan.

In this case, the petition for guardianship meets neither the requirements under *bilagáana* concepts nor under *Diné bi beenahaz'áanii* concepts. The Court concedes that the mother has not been the caretaker or guardian for this child, but there has been no evidence that she is now unwilling or unable to take up that role. Also, the arrangement that lead to child being raised by the petitioner thus far is not sufficient to create a guardianship pursuant to *Diné bi beenahaz'áanii*. When the father allowed the child to spend some time with the paternal uncle, it was not intended to be a permanent custodial relationship. Further, although the father may have consented to the arrangement, there was no agreement or consent from the mother. Therefore, the situation is very different than when the mother agrees that it is best for the family or clan that her child be raised by an aunt or other relative.

For the foregoing reasons, the Petition for Guardianship is hereby DENIED. Since there has never been any legal custody arrangements or guardianship decrees to the contrary, it is unnecessary to order that custody be restored in the mother. The mother has always remained child's legal guardian, and the Court simply affirms that relationship. The DSS is ordered to facilitate the physical transfer of S. from the petitioner to his mother, taking whatever intermediate steps are necessary to ensure the well being and best interests of the child. The Court trusts the expertise of the Division, and if further orders are necessary to carry out the custody transfer the Court expects a written document from the Division or the parties.

Throughout this action and at the final hearing, K.T. has been referred to as the child's biological father. Although his name does not appear on the birth certificate as the child's father, he agreed repeatedly at the hearing that he was the father and had no objections to such a claim. The mother makes no claim against paternity. The DSS Report names K.T. as the child's natural father, and states that he "claims he is the biological father .... " Report of the DSS, 9/15/05, p.5. Based on these findings, this Court establishes that K.T. is the natural father to child. *See Sombrero v. Honorable Angela Keahnie-Sanford*, 8 Nav. R. 360 (Nav. Sup. Ct. 2003). With the paternity finding comes the responsibility to financially support his son, father testified that he is currently unemployed, and therefore the Court calculates the child support owed based on an imputed federal minimum wage. The mother is also currently unemployed (*See* Report of DSS) and therefore her income will also be based on an imputed federal minimum wage. It is ordered that K.T. owes $154 each month for the financial support of his son. That amount is to be paid monthly to R.E. on behalf of child. For now, the Court leaves it to the parties to work out the dates and method of payment, but warns that if the father fails to pay the required amount the mother may file a Petition for Order to Show Cause and have this order enforced. If either parents' income or employment situation should change, a Petition to Modify may be filed.

With respect to visitation between the father and child, the Court leaves that up to the parents at this time. Unless there is good reason, the mother should not deny visitation to the father. As his primary custodian, the mother should be concerned about providing child with an ongoing relationship with as many members of his family (paternal and maternal) as possible. If the parties cannot work out a schedule on their own, they may return to the court for an order specifying the details of the visitation schedule. Should this be necessary, either party may file a Petition for Visitation.

Lastly, and perhaps most importantly at this time, the Court wishes to address Petitioner and her role with child. To say that the Court commends her for raising this child to date and for providing him with love and support is clearly insufficient. This decision undoubtedly seems unfair to Petitioner, who was the only party present in the courtroom with a truly well-established relationship with child. At the end of the hearing, when petitioner requested visitation with child, the Court stated that it could not order such visitation. Indeed, the Court stands by all its findings and discussions at the hearing and today in this order, and cannot order that the mother allow visitation between child and Petitioner. But the Court hopes that such visitation will occur and that all parties will facilitate child's transition now, and act in his best interests in the future.